In re CINCINNATI POLICING.

No. C–1–99–3170.

United States District Court,
S.D. Ohio,
Western Division.

April 7, 2003.

Jennifer Lynn Branch, Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Scott T. Greenwood, Greenwood & Associates, Kenneth L Lawson, Lawson & Associates, Cincinnati, OH, James Eichner, Shanetta Y. Brown Cutlar, Department of Justice, Civil Rights Division, Washington, DC, for plaintiffs.

Rita McNeil, Michael James Harmon, City of Cincinnati, Department of Law, Donald Edson Hardin, Stephen S. Lazarus, Hardin, Lefton, Lazarus & Marks LLC, Cincinnati, OH, William Robert Martin, Pat Woodward, Alan Freeeman, Washington, DC, for defendants.

Jay Rothman, Yellow Springs, OH, special master pro se.

Dr. Alan Kalmanoff, Berkeley, CA, special master.

ORDER

DLOTT, District Judge.

This matter comes before the Court on the motion of Plaintiff Cincinnati Black United Front ("CBUF") to withdraw as class representative in the above action. (Doc. # 112.) Class counsel filed the CBUF's motion on March 19, 2003; they supplemented that motion with Plaintiffs' Status Report on Class Representation (doc. # 114) on March 26, 2003. The Fraternal Order of Police and the

City of Cincinnati filed responses to the CBUF's motion. (Docs. # 116, 117.) For the reasons set forth below, the CBUF's motion is **GRANTED**.

By its motion, the CBUF has informed the Court that it wishes to withdraw as a class representative in order to devote all of its efforts as an organization to "advocacy on a broad range of social and economic issues much greater in scope than the Collaborative." (Doc. # 112 at 1–2.) If the Court permits the CBUF to withdraw, the American Civil Liberties Union of Ohio Foundation, Inc. ("ACLU") will be the sole remaining class representative. The ACLU has informed the Court that if the CBUF is permitted to withdraw, it intends to establish "an advisory panel of persons well-grounded in the African–American community" to "[e]nsure continuity of advocacy in this case." (Doc. # 114 at 1.) The City does not oppose the CBUF's withdrawal as class representatives, but asks the Court to place a number of restrictions on the future activities of the ACLU and class counsel. The Court will address these below. The Fraternal Order of Police ("FOP") opposes the CBUF's motion, contending that the CBUF may not unilaterally "escape from their contractual accountability" as set forth in the Collaborative Agreement. (Doc. # 116 at 3.)

■ The continuing, post-certification responsibilities of class representatives to the members of a plaintiff class are ill-defined. *See Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494, 495–96 (S.D.N.Y.1994). However, Federal Rule of Civil Procedure 23(a)(4) requires a court to determine prior to certifying a class action that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). After certifying the class, the court must continue to ensure the adequacy of class representation and may issue whatever orders may be necessary to fulfill that responsibility. *See* Fed.R.Civ.P. 23(d); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1213 (6th Cir.1997) (overturning as plain error district court's failure to modify scope of class once it became clear that named plain-

tiffs were not adequate representatives); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1765 at 293 (2d ed.1986) ("[A] favorable decision under Rule 23(a)(4) is not immutable. If later events demonstrate that the representatives are not adequately protecting the absentees, the court may take whatever steps it thinks necessary under Rule 23(c) or Rule 23(d) at that time."). Thus, before permitting the CBUF to withdraw, the Court must assure itself that the ACLU, as the remaining class representative, will represent the plaintiff class adequately.

■ When the Court approved the Collaborative Agreement in August, 2002, it stated, "There is no reason to doubt that the ACLU will fairly and adequately protect the interests of unnamed class members." (Doc. # 92 at 6.) This was true then, and it is equally true now. As pointed out in Plaintiffs' status report, the ACLU has represented plaintiffs in class action policing cases nationwide. When those cases have resulted in a comprehensive settlement agreement, such as the Collaborative Agreement, the ACLU has been integral in the implementation of those agreements. The ACLU also plans to establish an advisory panel consisting of class members from a broad spectrum of the African–American community. The community members selected by the ACLU and class counsel no doubt will provide invaluable assistance to class counsel during the nuts-and-bolts work of implementing the Collaborative Agreement. Therefore, the Court concludes that the ACLU will continue to represent the class adequately.

Not only will the ACLU continue to represent the plaintiff class adequately, but in light of the instant motion, it would be improper to allow the CBUF to continue as a class representative. As a class representative, the CBUF was charged with protecting and vindicating the legal rights of the absent members of the plaintiff class. The plaintiff class in this suit is broadly defined and includes an unknowable number of citizens of Cincinnati and elsewhere.[1] Protecting the

---

1. The plaintiff class is defined as:

All African–American or Black persons and

rights of this class is a vital and time-consuming responsibility. The CBUF has told the Court that it does not wish to devote any more of its limited energies to fulfilling that responsibility. The Court therefore cannot be assured that if it were forced to continue as a class representative, the CBUF would represent the class with sufficient zeal. An adequate class representative, the ACLU, is already in place. Therefore, it would be contrary to the dictates of Rule 23(a)(4) and unjust to the plaintiff class for the Court to force the CBUF to continue to act as a class representative.

The FOP's concerns in opposing the CBUF's motion are entirely distinct from those underlying Rule 23(a)(4), however. Instead of discussing whether the CBUF or the ACLU are adequate class representatives, the FOP asks the Court to deny the CBUF's motion to ensure that "[the CBUF's] accountability under the terms of the [Collaborative Agreement] remains enforceable." (Doc. # 116 at 3.) The FOP need not worry. After its withdrawal, the CBUF will remain just as accountable under the Collaborative Agreement as it was as a class representative. However, without further explanation, the Court's assurance is unlikely to allay the FOP's concerns, because the FOP appears to believe that the CBUF entered into the Collaborative Agreement and assumed the responsibilities set forth therein only on its own behalf. This is incorrect.

The very first paragraph of the Collaborative Agreement makes clear that the Collaborative Agreement binds the plaintiff class as a whole, not just the class representatives:

> The Cincinnati Black United Front ("Front"), the American Civil Liberties Union of Ohio Foundation, Inc. ("ACLU"), *on behalf of the class, as defined herein* ("the Plaintiffs"), the City of Cincinnati ("City"), and the Fraternal Order of Police ("FOP"), hereinafter collectively referred to as the "Parties[,]" hereby enter into this Collaborative Agreement . . . .

(Collaborative Agreement ¶ 1 (emphasis added).) The FOP seems concerned specifically about the CBUF's responsibilities under the "mutual accountability plan." The Collaborative Agreement defines the plan as one "that ensures that the conduct of the City, the police administration, members of the Cincinnati Police Department and members of the general public are closely monitored so that the favorable and unfavorable conduct of all is fully documented and thereby available as a tool for improving police-community relations under this Agreement." (*Id.* ¶ 30.) Thus, the "members of the general public," not just the CBUF, are held accountable under the mutual accountability plan. Moreover, the responsibilities undertaken by the parties to the Collaborative Agreement are immense in scope. (*See, e.g., id.* ¶ 29(f).) [2] The class representatives and class counsel could not hope to fulfill them all; the participation of the plaintiff class is necessary. For these reasons, the Collaborative Agreement binds not just the class representatives but the plaintiff class as a whole.

Additionally, because the entire plaintiff class took on the obligations in the Collaborative Agreement, the CBUF's withdrawal as class representative does not free its members from those obligations. As such, the FOP's threat that if the CBUF "is allowed to escape from [its] contractual accountability, then the entire [Collaborative Agreement] will be viewed as a sham by at least the FOP" (doc. # 117 at 3) is unjustified. By withdrawing as class representative, the CBUF is not "escaping" from accountability. The CBUF and its members were bound by

---

people perceived as such who reside, work in and/or travel on public thoroughfares in the City of Cincinnati, Ohio either now or in the future and who are stopped, detained, or arrested by Cincinnati Police Officers or their agents, and citizens of any race who have been or will be subjected to a use of force by Cincinnati police officers and their agents.
(Doc. # 92 at 3.)

**2.** This paragraph states:

The Parties shall coordinate efforts undertaken through the Community Partnering Program and establish an ongoing community dialogue and interaction including, but not limited[ ] to[,] structured involvement between the [Cincinnati Police Division] and youth as well as with property owners, businesses, tenants, community and faith-based organizations, motorists, low[-]income residents and other city residents on purposes and practices of [Community Problem–Oriented Policing].

the Collaborative Agreement yesterday, and they will be bound equally tomorrow, whether they are a class representative or not. In fact, there will be only two practical results of the CBUF's withdrawal: 1) the CBUF will no longer be required to fairly and adequately represent the best interests of the plaintiff class; and 2) the members of the CBUF will no longer wield any greater influence over the implementation of the Collaborative Agreement than any other class member. Therefore, instead of causing concern among those members of the FOP who fear that the CBUF will no longer be accountable, the CBUF's withdrawal should engender celebration by those who believe that the CBUF's participation hindered effective and prompt implementation of the Collaborative Agreement.

Finally, the City's response raises two collateral issues that the Court finds it necessary to address. First, with respect to the advisory council proposed by the ACLU,

> the City urges the Court to choose a group that: has the capacity to undertake the important responsibilities assigned to the community in the [Collaborative] Agreement; is sufficiently broad-based to represent the entire class adequately; and that does not possess, or take on, an organizational purpose that poses a direct conflict with the goal and spirit of the [Collaborative] Agreement.

(Doc. # 117 at 3.) The City's suggestion assumes that the Court will be selecting the members of the ACLU advisory panel. This is incorrect. The role of the Court is to ensure that the plaintiff class will be adequately represented in the future. The Court has done so by approving the ACLU as class representative. It is now up to the ACLU and class counsel to determine how best to represent the class. This is not to say that the City does not suggest laudable qualities for the members of the advisory council. However, at this stage it is not appropriate for the Court, and it is *never* appropriate for the other parties, to determine how best to protect the rights of the plaintiff class. Only if the ACLU's representation becomes deficient must the Court step in and attempt to remedy any problems.

Second, the City tries in its response to draw the Court's attention to potential conflicts of interest of class counsel:

> [I]n light of the [conflict between the objectives of the collaborative and the goals of the CBUF], it likewise follows that the class counsel, who currently represent [the] CBUF, should be precluded from representing the CBUF[ ] against the City, now or in the future, in matters involving either the Collaborative Agreement, the Memorandum of Agreement between the United States Department of Justice and the City of Cincinnati, or any related matters. Moreover, consistent with their commitment to the collaborative, it is imperative that, in other litigation matters, class counsel refrain from referring to the Collaborative Agreement, or to any part of the collaborative process in which they have participated.

(Doc. # 117 at 3.) As an initial matter, the Court cannot determine if the City wishes the above statements to be interpreted as a suggestion or merely an attempt to impugn class counsel's ethical standards. Though it would certainly comport with the City's recent discourse to attacks the ethics of class counsel, the Court will grant the City the benefit of the doubt and assume that any implicit references to class counsel's ethics are unintended. Instead, the Court will treat the City's comments as suggestions intended to aid the Court in its management of this action. However, as suggestions the City's statements are unhelpful, because they are nonsensical and, to the extent that they are even cogent, they raise issues that are not currently before the Court.

The City suggests first that because the goals of the CBUF may conflict with those of the Collaborative Agreement, class counsel should not be permitted to represent the CBUF against the City in any matters relating to the Collaborative Agreement or the Memorandum of Agreement. The members of the CBUF are members of the plaintiff class, however. It is the duty of class counsel to represent that class in enforcing and implementing the terms of the Collaborative Agreement. The City certainly does not suggest that class counsel must forego its

duty to the class in order to avoid some perceived conflict of interest. However, if the City does not intend for class counsel to forsake its responsibilities to the class, the Court cannot discern what the City means by its suggestion. Specifically, it is unclear what other matters "involving" the Collaborative Agreement or Memorandum of Agreement the City wants class counsel to avoid.

The City next suggests that class counsel must refrain from "referring" to the Collaborative Agreement, or to any part of the collaborative process, in other litigation matters. Class counsel are prominent civil rights attorneys in Cincinnati. As such, they represent clients whose rights have been violated by the police. Unfortunately, such violations continue to occur despite the existence of the Collaborative Agreement. Inevitably, they will continue in the future. The provisions of the Collaborative Agreement go to the heart of how the Cincinnati Police Division conducts law enforcement activities. Because of this, any civil rights actions brought to remedy future civil rights violations will almost certainly "refer" to the collaborative process in some way. Thus, it is ludicrous for the City to suggest that class counsel must forego *any* reference to the Collaborative Agreement in future litigation. In fact, the City's suggestion is mean-spirited. On one hand, the City has fought vigorously to keep class counsel's legal fees from being paid out of City funds. On the other, it now wants class counsel to significantly curtail their legal practices. The Court will not order class counsel to do so. Class counsel have taken on the overwhelming, and not lucrative, task of implementing the Collaborative Agreement. For this, class counsel should be commended, not punished. Of course, if the City has a concern about a conflict of interest in a specific lawsuit, it may bring that concern before the Court at the proper time. Nevertheless, the Court is confident that class counsel's high ethical standards will prevent them from becoming involved in any litigation that might present such a conflict.

In conclusion, the Court **GRANTS** the CBUF's motion to withdraw as class representative. (Doc. # 112.) As the CBUF is unwilling to continue in that capacity, the Court finds that the it will no longer "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4). The Court also finds that the plaintiff class will continue to be represented in an exemplary fashion by the ACLU. Finally, the Court reiterates that the CBUF's withdrawal does not mean that the CBUF is no longer subject to the Collaborative Agreement. The Collaborative Agreement binds equally all members of the plaintiff class, including the CBUF and its members.

IT IS SO ORDERED.

